**XIU QING JIANG, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

**No. 09–1662.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) March 20, 2012.

Filed: March 29, 2012.

Thomas D. Barra, Esq., Barra & Ieraci, Forest Hills, NY, for Petitioner.

Eric H. Holder, Jr., Esq., Thomas W. Hussey, Esq., Lyle D. Jentzer, Esq., United States Department of Justice, Washington, DC, Sada Manickam, Esq., for Respondent.

Before: RENDELL, FISHER and CHAGARES, Circuit Judges.

## OPINION OF THE COURT

FISHER, Circuit Judge.

Xiu Qing Jiang ("Jiang") applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). An Immigration Judge ("IJ") denied her application, and the Board of Immigration Appeals ("BIA") affirmed the IJ's ruling. Jiang now petitions for review. For the reasons set forth below, we will deny her petition.

## I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

Jiang is a native and citizen of China who arrived in the United States in December 2005 without valid entry documents. On December 16, 2005, the Department of Homeland Security served her with a notice to appear, charging her with being removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an immigrant who, at the time of her application for admission, was not in possession of a valid entry document. On January 31, 2006, Jiang applied for asylum.

According to her asylum application, Jiang married Dian Zhi Jiang ("Dian") on January 4, 2001, and gave birth to a son on September 14, 2002. Because the child was male, pursuant to family planning policies, she was not allowed to have a second child. Instead, she was forced to have an intrauterine device ("IUD") inserted and required to submit to regular gynecological checkups. In June 2003, Jiang learned that the IUD had fallen out and that she was one month pregnant. Because she wanted to keep the child, she hid at her uncle's house. She asserts that family planning officials arrested Dian, who was able to obtain his release only by promising to turn Jiang over to the officials. Family planning officials eventually located Jiang, and on October 16, 2003, arrested her and forced her to undergo an abortion at Langqi Town Health Center in Fujian Province. Later that month, the "village" ordered Jiang and Dian to pay a fine, and the family planning officials notified them that one of them would have to be sterilized. Dian fled China and in December 2003, entered the United States

and applied for asylum.[1] Jiang subsequently advised the family planning officials that because Dian was no longer in China, she and Dian could no longer violate the family planning policy. The officials agreed not to sterilize her, but forced her to have another IUD inserted. Jiang alleged that the IUD caused her to suffer excessive menstrual bleeding and that, despite this complication, the family planning officials refused to remove the device. She fled to the United States in December 2005.

The IJ held a hearing on the merits of Jiang's asylum claim on August 14, 2007. Although Jiang's testimony was generally consistent with the statements in her asylum application, there were several discrepancies, which the IJ deemed relevant to her credibility. Specifically, Jiang testified that on October 16, 2003, when family planning officials took her to undergo a forced abortion, Dian was present at the house, and was beaten and arrested. Not only did no such allegation appear in Jiang's asylum application, but it actually contradicted Dian's statements indicating that he was not present. Jiang also submitted several pieces of documentary evidence, including an "abortion certificate," a fine notice, and several affidavits. The IJ found that the "abortion certificate" and the fine notice appeared to have been procured for the purpose of the hearing and thus refused to accord them any weight. Accordingly, the IJ determined that Jiang's claim that she was forced to undergo an abortion was not credible, and her remaining claims failed to demonstrate a well-founded fear of future persecution if she returned to China.

Jiang appealed the IJ's decision to the BIA. On February 12, 2009, the BIA dismissed her appeal, reasoning that she had failed to sufficiently explain significant discrepancies in the record and submit critical corroborative documentation. Jiang filed a timely petition for review.

## II.

The BIA had jurisdiction pursuant to 8 C.F.R. § 1003.1(b)(3), and we have jurisdiction under 8 U.S.C. § 1252(a). We review the BIA's decision and look to the IJ's ruling only insofar as the BIA deferred to it. *Huang v. Att'y Gen.*, 620 F.3d 372, 379 (3d Cir.2010). We review the BIA's legal conclusions de novo. *Id.* We defer to the BIA's findings of fact that are supported by substantial evidence, including adverse credibility determinations, and will reverse only "if no reasonable fact finder could make that finding on the administrative record." *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir.2003).

## III.

A grant of asylum allows an alien who is otherwise subject to removal to remain in the United States if she qualifies as a "refugee." *Chukwu v. Att'y Gen.*, 484 F.3d 185, 188 (3d Cir.2007). A refugee is an individual who is unable or unwilling to return to her home country because of past persecution or a well-founded fear of future persecution based on a protected ground. *Lukwago v. Ashcroft*, 329 F.3d 157, 167 (3d Cir.2003) (citing 8 U.S.C. § 1101(a)(42)(A)). To establish a well-founded fear of future persecution, the applicant must show that there is a "reasonable possibility" that she would suffer persecution if returned to her country. 8 C.F.R. § 1208.13(b)(2)(i)(B). "[A] person who has been forced to abort a pregnancy

---

An IJ denied Dian's application for asylum, and on July 7, 2006, the BIA dismissed his appeal. The U.S. Court of Appeals for the Second Circuit denied his petition for review on September 27, 2007. *Jiang v. Keisler*, 248 Fed.Appx. 254, 257 (2d Cir.2007).

... or who has been persecuted for ... resistance to a coercive population control program, shall be deemed to have been persecuted on account of [a protected ground.]" 8 U.S.C. § 1101(a)(42). A showing of past persecution creates a rebuttable presumption of future persecution on the same basis. 8 C.F.R. § 1208.13(b)(1).

If believed, Jiang's testimony that she was forced to undergo an abortion would likely entitle her to asylum. However, nothing in the record would *"compel[ ]"* a reasonable adjudicator to conclude that Jiang was credible, and thus that her claim that she underwent a forced abortion was true. *See* 8 U.S.C. § 1252(b)(4)(B) (emphasis added). Significantly, Jiang provided conflicting accounts of what occurred on October 16, 2003, the day that she was allegedly forced to have an abortion. Jiang testified that when the family planning officials found her at her uncle's house, a neighbor ran to notify Dian, who was at work, and Dian returned immediately. However, in her asylum application, Jiang never mentioned that Dian was present, let alone that he was beaten and arrested. Her testimony was also inconsistent with Dian's asylum application and his testimony at his asylum hearing that he was not present when the family planning officials took Jiang for the abortion. The BIA noted an additional discrepancy between the accounts of Dian and Jiang: Dian testified that Jiang went into hiding after he left China, but Jiang denied doing so. Although Jiang attempted to explain these discrepancies, the BIA found such explanations inadequate, and under the "extraordinarily deferential" substantial evidence standard, we cannot say that the BIA's conclusion was erroneous. *See Abdulrahman v. Ashcroft,* 330 F.3d 587, 598 (3d Cir.2003).

Moreover, we agree with the BIA that Jiang's submission of suspect documentary evidence provided further reason to doubt her claims. According to the U.S. Department of State's "Country Report" on China, the U.S. Embassy in China is unaware of the practice of issuing abortion certificates. In fact, the Country Report states that "the only document that might resemble and be confused with such a certificate is a document issued by hospitals upon a patient's request after a voluntary abortion." The BIA's conclusion that the abortion certificate undermined Jiang's claim that her abortion was forced is "consistent with the common sense notion that government officials who force a woman to abort a child would hardly be likely to issue a certificate attesting to that fact." *Chen v. Gonzales,* 434 F.3d 212, 219 (3d Cir.2005). Additionally, as the BIA found, the way in which the fine document is worded makes it appear that it was specifically prepared for use in an immigration proceeding.

Because there were valid reasons to doubt Jiang's credibility, it was appropriate for the IJ and the BIA to look for corroborating evidence. *See* 8 C.F.R. § 1208.16(b). Jiang, however, failed to provide medical records relating to her pregnancy or the insertion of an IUD. She also failed to provide an affidavit from the neighbor who allegedly fetched Dian from his work site on October 16, 2003. In light of Jiang's credibility issues, the problematic documentary evidence, and her failure to provide corroboration as to key aspects of her claim, we conclude that the BIA's decision that Jiang did not suffer past persecution was supported by substantial evidence.

We similarly find no error in the BIA's conclusion that Jiang presented insufficient evidence that she would be subject to persecution if she was forced to return to China. Generalized statements that she

would be subjected to "the torture of sterilization or other more extreme measures" are insufficient to establish a "reasonable possibility" of future persecution. *See* 8 C.F.R. § 1208.13(b)(2)(i)(B).[2]

## IV.

For the foregoing reasons, we will deny Jiang's petition for review.

---

**2.** Because Jiang has failed to satisfy the lower burden of proof required for an asylum claim, she has likewise failed to satisfy the "clear probability" standard required for withholding of removal. *Chukwu v. Att'y Gen.,* 484 F.3d 185, 188 (3d Cir.2007). She has also failed to demonstrate eligibility for protection under CAT because she has not shown that it is more likely than not that she would be tortured upon return to China. *See* 8 C.F.R. § 1208.16(c)(2).